```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :    07 Cr. 918 (LAK)

        -v-                         :

KENNY RIVERA,                       :
    a/k/a "Luis Mosquea,"
    a/k/a "Francisco Rivera,"       :

              Defendant.            :
- - - - - - - - - - - - - - - - - - - x
```

GOVERNMENT'S SENTENCING MEMORANDUM

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for the United States
    of America.

CHRISTIAN R. EVERDELL
Assistant United States Attorneys
    - Of Counsel -



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 21, 2008

**BY HAND DELIVERY**

The Honorable Lewis A. Kaplan
United States District Judge
United States Courthouse
500 Pearl Street, Room 1310
New York, New York 10007

      Re:    <u>United States v. Kenny Rivera</u>
              **07 Cr. 918 (LAK)**

Dear Judge Kaplan:

      This matter is scheduled for sentencing on March 28, 2008, at 10:00 a.m. The Government respectfully submits this letter in response to the defendant's sentencing letter, in which he asks the Court to impose a sentence of time served (approximately six months), well below the applicable Sentencing Guidelines range of 15-21 months' imprisonment. *See* Defendant's March 14, 2008 Sentencing Letter ("Def. Ltr.") at 1. In so arguing, the defendant asserts that the 46-month sentence he received for his prior illegal reentry conviction in 1999 was the result of an "inaccurate calculation" of his Guidelines range, and that the Court should take this alleged error into account when imposing sentence for the instant offense. *See id.* at 4-5, 7. For the reasons set forth below, the Government submits that this argument is without merit, and that a sentence of time served would be inappropriate in this case. The Government further submits that a sentence within the Guidelines range of 15-21 months would be sufficient, but not greater than necessary, to serve the purposes of sentencing.

BACKGROUND

A.      **Offense Conduct**

      As described in more detail in the Presentence Investigation Report ("PSR"), the defendant, who is a citizen of the Dominican Republic, entered the United States illegally in 1990 through Puerto Rico. (PSR ¶¶ 40, 42). In 1994, the defendant was arrested by officers from the

The Honorable Lewis A. Kaplan
March 21, 2008
Page 3 of 8

New York City Police Department ("NYPD"), who were conducting a search warrant in the apartment where the defendant was located. (PSR ¶ 29). The defendant and two others were found in the apartment with three ounces of cocaine and various drug paraphernalia. (PSR ¶ 28). During the course of that arrest, the defendant threw a .45 caliber semi-automatic pistol from the window of the apartment and then attempted to grab the arresting officer's revolver as he was being taken into custody, causing him physical injury. (PSR ¶ 29). The defendant was convicted of criminal possession of a controlled substance in the third degree, in New York State Supreme Court, New York County, on January 31, 1995. (PSR ¶ 26).

On January 4, 1997, the defendant was lawfully deported from the United States to the Dominican Republic, and then returned to the United States without permission in March 1999. (PSR ¶ 42). Shortly after returning to this country, he was arrested and later convicted for illegal reentry. (PSR ¶¶ 30-32). After serving a sentence of 46 months' imprisonment, the defendant was deported to the Dominican Republic on March 1, 2003, but again returned to the United States without permission in November 2006 (PSR ¶¶ 32, 35, 43). On January 11, 2007, the defendant was found back in the United States when he was arrested in the Bronx by officers from the NYPD and charged with criminal possession of a controlled substance in the seventh degree for possessing crack cocaine. (PSR ¶¶ 36-37). The defendant gave the arresting officers the name "Luis Mosquea." (PSR ¶ 37). A fingerprint analysis revealed that "Luis Mosquea," was, in fact, the defendant, Kenny Rivera.

**B.     The Guidelines Range**

On September 28, 2007, Indictment 07 Cr. 918 (LAK) was filed charging the defendant in one count with illegally reentering the United States after having been previously convicted of a felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(1). On October 12, 2007, the Government provided the defendant with a *Pimentel* letter, which calculated the defendant's Guidelines range as 10-16 months' imprisonment, based on a total offense level of 10 and Criminal History Category III.[1] On December 10, 2007, the defendant pled guilty, without a plea agreement, to the sole count of Indictment 07 Cr. 918 (LAK). On February 7, 2008, the Probation Department released the draft PSR, which calculated the defendant's Guidelines range as 15-21 months' imprisonment, based on a total offense level of 10 and Criminal History Category IV. On March 6, 2008, the Probation Department released the final PSR, which increased the total

---

[1] The criminal history that the Government used to prepare the Pimentel letter listed only the defendant's prior state convictions and did not reflect his prior federal conviction in 1999 for illegal reentry. Accordingly, the Government erroneously counted five criminal history points, instead of eight, and placed the defendant in Criminal History Category III, instead of IV. Had the Government correctly calculated the defendant's criminal history points, the resulting Guidelines range would have been 15-21 months' imprisonment, as reflected in the initial draft of the PSR.

The Honorable Lewis A. Kaplan
March 21, 2008
Page 4 of 8

offense level from 10 to 21, yielding a Guidelines range of 57-71 months' imprisonment. The increase stemmed from a determination that the defendant's prior 1995 narcotics conviction was "a felony drug trafficking offense" meriting a 16-level enhancement, pursuant to U.S.S.G. § 2L1.2(b)(1)(A), as opposed to a 4-level enhancement for a simple felony, pursuant to U.S.S.G. § 2L1.2(b)(1)(D).

The defendant argues that his prior narcotics conviction is no longer a "felony drug trafficking offense" or an "aggravated felony" in light of the Supreme Court's decision in *Lopez* v. *Gonzales*, — U.S. —, 127 S. Ct. 625 (2006), because the conviction was for simple possession of cocaine, not for possession with the intent to distribute cocaine, or sale of cocaine. *See* Def. Ltr. at 4-5. As set forth in the *Pimentel* letter, the Government agrees that the defendant's prior 1995 narcotics conviction is not a "felony drug trafficking offense" or an "aggravated felony" under the reasoning of *Lopez*. *See* 21 U.S.C. § 844(a); *Lopez*, 127 S. Ct. at 633 (state narcotics felonies that are not felonies under federal narcotics laws, including certain possession offenses, do not qualify as aggravated felonies under the Immigration and Nationality Act).

Accordingly, the Government believes that the appropriate Guidelines range for the defendant is 15-21 months' imprisonment, based on a total offense level of 10 and Criminal History Category IV. The defendant agrees with this calculation. *See* Def. Ltr. at 5 ("Mr. Rivera's Guidelines range is properly 15-21 months, as stated in the original draft of the PSR."). However, as set forth below, the Government does not believe that the 46-month sentence that the defendant received in 2000 for his first illegal reentry offense was improperly calculated under the law as it existed at the time, or that the defendant should receive credit towards his sentence in this case for the time he already served for the previous offense.

### DISCUSSION

A.   **The Sentencing Guidelines**

The United States Sentencing Guidelines (the "Guidelines") still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court recently stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, — U.S. —, 128 S. Ct. 586, 596 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1)); the four legitimate

The Honorable Lewis A. Kaplan
March 21, 2008
Page 5 of 8

purposes of sentencing (§ 3553(a)(2)); "the kinds of sentences available" (§ 3553(a)(3)); the Guidelines range itself (§ 3553(a)(4)); any relevant policy statement by the Sentencing Commission (§ 3553(a)(5)); "the need to avoid unwarranted sentence disparities among defendants" (§ 3553(a)(6)); and "the need to provide restitution to any victims" (§ 3553(a)(7)). *Gall*, 128 S. Ct. at 596-97.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 128 S. Ct. at 597 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita v. United States*, 551 U.S. —,127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 128 S. Ct. at 594; *see also Rita*, 127 S. Ct. at 2464. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 128 S. Ct. at 597.

B. **The 46-Month Sentence That The Defendant Received For His First Illegal Reentry Conviction Was Properly Calculated And Does Not Entitle The Defendant To Leniency In This Case**

The defendant claims that the defendant served more time that he should have for

The Honorable Lewis A. Kaplan
March 21, 2008
Page 6 of 8

his first illegal reentry conviction in 2000 because the Probation Department incorrectly found that his 1995 narcotics conviction was an "aggravated felony," which led to an inflated Guidelines range. Def. Ltr. at 4-5, 7. According to the defendant, this "inaccurate calculation," which was made clear by the *Lopez* decision in 2006, entitles the defendant to leniency for the instant offense "in the interests of justice under § 3553(a)." *Id*. at 7.

This argument is without merit. The Probation Department's calculation of the defendant's Guidelines range in 2000 was not rendered "incorrect" simply because six years later the Supreme Court clarified an issue about which there was a clear conflict in the Circuit Courts. *See Lopez*, 127 S. Ct. at 629 & n.3 (granting certiorari "to resolve a conflict among the Circuits about the proper understanding of conduct treated as a felony by the State . . . but as a misdemeanor under the [Controlled Substances Act]"). In fact, at the time the PSR was created in 2000, the Probation Department correctly followed existing Second Circuit precedent holding that a prior felony narcotics conviction under state law will be treated as an "aggravated felony" warranting the 16-level enhancement under the Sentencing Guidelines, even if the state offense would have been prosecuted as a misdemeanor under federal narcotics laws. *See United States* v. *Pornes-Garcia*, 171 F.3d 142, 145 (2d Cir. 1999).

The defendant attempts to rectify this by asserting that *Lopez* applies retroactively. Def. Ltr. at 5. As an initial matter, the defendant is incorrect that *Lopez* applies retroactively. Although only a few courts have addressed this issue in the short time since *Lopez* was decided, the majority have concluded that Lopez should not be retroactively applied. *See Storeby* v. *United States*, Nos. 8:02-cr-65-T-24TBM, 8:07-cv-882-T-24TBM, 2007 WL 1577804, at *4 (M.D. Fla. May 31, 2007); *United States* v. *Carroll*, Nos. 5:03-cr-42/MCR, 5:06-cv-238/MCR, 2007 WL 1299334, at * 11 (N.D. Fla. April 30, 2007); *United States* v. *Barber*, Civil No. 07-5103, Criminal No. 01-50019, 2007 WL 3101852, at * 3 (W.D. Ark. Oct. 22, 2007); *United States* v. *Gooden*, Criminal No. 04-226, Civil Action No. 07-580, 2007 WL 4276458, at *2 (W.D. Pa. Dec. 4 2007); *but see United States* v. *Keyes*, Criminal No. 05-cr-00217-LTB, Civil No. 07-cv-00867-LTB, 2007 WL 3342590, at * 3 (D. Colo. Nov. 9, 2007) (finding that *Lopez* is retroactively applicable on collateral review).

Furthermore, it is irrelevant whether *Lopez* applies retroactively, because the defendant's conviction for the first illegal reentry offense is now final, and the defendant has already served the entire sentence that was imposed. The defendant is not challenging his conviction, or the sentence he received for that conviction, on direct review or by a collateral attack. Instead, the defendant is raising his prior illegal reentry sentence in the context of his sentencing for the instant illegal reentry offense in order to seek leniency. The principle of retroactivity has no applicability to such proceedings. *See Whorton* v. *Bockting*, — U.S. —, 127 S. Ct. 1173, 1180-81 (2007) (discussing the framework set up in *Teague* v. *Lane*, 489 U.S. 288 (1989), regarding the retroactive applicability of rules announced by the Supreme Court to cases on direct and collateral review).

The Honorable Lewis A. Kaplan
March 21, 2008
Page 7 of 8

        Because *Lopez* itself does not support the imposition of a more lenient sentence, the defendant's only remaining argument on this point is that the Court should grant him some form of credit towards the sentence he will receive in this case "in the interests of justice" under § 3553(a), because he would have served much less time for the first illegal reentry conviction if the law were as it is now. *See* Def. Ltr. at 7. This argument is unpersuasive. The defendant has already served the full term of a sentence that was entirely valid when it was imposed. He is not entitled to less prison time now to make up for an error that never existed. Furthermore, to find that the defendant is entitled to leniency in this case because the law is now different would essentially give the defendant credit for choosing to violate the same law again at a time when the penalties were less severe. Such a result would not make sense. The "interests of justice" would be served by imposing a Guidelines sentence, which would serve to deter a repeat offender from engaging in this kind of criminal activity yet again.

**C.    A Guidelines Range Is Appropriate In This Case**

        The defendant's remaining arguments do not counsel in favor of imposing a non-Guidelines sentence in this case. *See* Def. Ltr. at 7-8. While the defendant's economic circumstances in the Dominican Republic were certainly difficult, and while the defendant may have been motivated to come to the United States to help his family, similarly regrettable circumstances are shared by a large number of immigrants who illegally enter the country. Granting leniency on these grounds does not promote respect for the law or help deter others from making the same choice to violate the immigration laws of the United States.

        Furthermore, the defendant's record while in the United States has not been exemplary. His first deportation was occasioned by an arrest for cocaine possession, during which the defendant not only disposed of a firearm, but also reached for the firearm of the arresting officer as he was being apprehended and caused him physical injury. (PSR ¶ 29). After returning illegally to the United States for the second time in November 2006, the defendant was again arrested for drug possession; this time crack cocaine. (PSR ¶ 37). Hence, not only has the defendant repeatedly violated the federal immigration laws by returning to this country illegally on two separate occasions, but he has also repeatedly violated the narcotics laws and posed a danger to the community.

        Given these circumstances, the Government believes that the defendant's requested sentence of time served (approximately six months) would be entirely inappropriate and would not adequately serve the purposes of sentencing as articulated in Section 3553(a). Such a sentence would not reflect the seriousness of the defendant's offense, or the fact that he is a repeat offender, and would not afford adequate deterrence to future criminal conduct, on the part of this defendant or others.

The Honorable Lewis A. Kaplan
March 21, 2008
Page 8 of 8

      For these reasons, the Government respectfully requests that the Court impose a sentence of imprisonment within the applicable Guidelines range. The Government believes that such a sentence would be sufficient, but not greater than necessary, to serve the purposes of sentencing.

      Respectfully submitted,

      MICHAEL J. GARCIA
      United States Attorney
      Southern District of New York

By:   /s/ Christian R. Everdell
      Christian R. Everdell
      Assistant United States Attorney
      212-637-2556

cc:    Fiona Doherty, Esq.